IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| AFCO CREDIT CORPORATION, | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | MO:25-CV-00503-DC-RCG |
| | § | |
| LOGAN TRANSPORTATION, INC, | § | |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Plaintiff AFCO Credit Corporation's ("Plaintiff") Motion for Default Judgment. (Doc. 11).[1] This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 11).

## I.    BACKGROUND

This is a breach of contract case. On October 30, 2025, Plaintiff filed its Complaint against Defendant Logan Transportation, Inc. ("Defendant"). (Doc. 1). The relevant factual allegations are as follows. On July 30, 2024, AFCO Premium Credit LLC, as lender, and Defendant, as insured borrower, executed a Premium Finance Agreement (the "Finance Agreement"). *Id*. at 2. That same day, AFCO Premium Credit LLC transferred and assigned to Plaintiff all of its rights, title, and interest in and to the Finance Agreement—as such, Plaintiff is AFCO Premium Credit LLC's successor-in-interest. *Id*.  Under the Finance Agreement, Plaintiff made a loan to Defendant in the total amount of $1,737,138.81, to pay the insurance premiums

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

for certain insurance policies as identified on the Finance Agreement. *Id*. Pursuant to the Finance Agreement, Defendant agreed to make a down payment in the amount of $165,319.05 and was required to make eleven consecutive monthly payments to Plaintiff, each in the amount of $165,319.05. *Id*. Additionally, Defendant is obligated to pay the attorneys' fees and costs incurred by Plaintiff in the enforcement of its rights thereunder, including this lawsuit. *Id*. at 3.

Defendant is in default under the Finance Agreement by failing to make timely payments. *Id*. Defendant made two payments under the Finance Agreement, each in the amount of $165,319.05. *Id*. Defendant's third payment, made in October of 2024, in the amount of $165,319.05 was returned to Defendant due to non-sufficient funds. *Id*. Defendant failed to make any other payments due under the Finance Agreement. *Id*. On October 11, 2024, Defendant was notified of its default under the Finance Agreement via written demand and was instructed to immediately cure the default. *Id*. On October 28, 2024, after failing to cure the ongoing default, Defendant was notified of the cancellation of the Financed Policies. *Id*. Pursuant to the terms of the Finance Agreement, the entire amounts due thereunder have been accelerated. *Id*. Defendant has failed or refused to pay the amount due and owing under the Finance Agreement. *Id*. at 4.

Summons in this case were issued as to Defendant on October 30, 2025. (Doc. 3). On November 20, 2025, Plaintiff filed executed summons as to Defendant. (Doc. 4). Plaintiff's proof of service shows Defendant was personally served through its registered agent, Marcos Jacobo, by process server at 2250 South Dixie Boulevard, Odessa, Texas 79766, on November 12, 2025. *Id*. On December 10, 2025, the Court issued an Order to Defendant to show cause why it had not filed a responsive pleading in this case. (Doc. 5). To date, Defendant has failed to answer Plaintiff's Complaint or otherwise make an appearance in this lawsuit. On December 16, 2025, Plaintiff filed a Motion for Clerk's Entry of Default. (Doc. 7). On December 29, 2025, the Clerk

of Court entered default against Defendant. (Doc. 10). On February 4, 2026, Plaintiff filed the instant Motion for Default Judgment. (Doc. 1).

Plaintiff brings a breach of contract claim against Defendant and seeks a money judgment in the amount of $332,262.29, consisting of (1) $328,276.89 due and owing under the Premium Finance Agreement as of February 4, 2026, and (2) $3,985.40 in attorney fees and costs, as well as post-judgment interest. (Docs. 11, 11-1).  A hearing was held on the instant Motion for Default Judgment on March 5, 2026. (Doc. 15). Accordingly, this matter is now ripe for disposition.

## II.     LEGAL STANDARD

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to plead or otherwise defend the suit. FED. R. CIV. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *Id*. The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are

3

clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Second, courts assess the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish his entitlement to relief. *See 1998 Freightliner*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Third, courts determine what form of relief, if any, the plaintiff should receive in the case. *Id.*; *1998 Freightliner*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III. DISCUSSION

Applying the three-part analysis detailed above, the Court finds Plaintiff is entitled to a default judgment.

#### A. Default Judgment is Procedurally Warranted

In light of the six *Lindsey* factors enumerated above, the Court finds that default judgment is procedurally warranted. First, Defendant has not filed any responsive pleadings or otherwise appeared in this case. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, Defendant's total failure to respond has brought the adversarial process to a halt, effectively prejudicing Plaintiff's interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since over the course of this case, Defendant has not responded to the summons and Complaint, the

4

Court's Show Cause Order, the Entry of Default, or Plaintiff's Motion for Default Judgment. *See*

*J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding

default judgment is appropriate if defendants are totally unresponsive and the failure to respond

is plainly willful, as reflected by the parties' failure to respond either to the summons and

complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court indicating Defendant's silence is the result

of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendant has

had over four months to respond to Plaintiff's claims or otherwise appear in this matter.

Consequently, any purported harshness of a default judgment is mitigated by Defendant's

inaction for this lengthy time period. *United States v. Rod Riordan Inc.*, No. 17-CV-071, 2018

WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that

give rise to "good cause" to set aside the default if challenged by Defendant. *Lindsey*, 161 F.3d at

893. Therefore, the Court finds default judgment is procedurally warranted under these

circumstances.

### B. Default Judgment is Substantively Warranted

Due to the entry of default, Defendant is deemed to have admitted the allegations

outlined in Plaintiff's Complaint. *See Nishimatsu Constr.*, 515 F.2d at 1206. Even so, the Court

must review the pleadings to determine whether Plaintiff pleaded a sufficient basis for its claims

to relief. *See id*. Federal Rule of Civil Procedure 8 guides this analysis:

> Rule 8(a)(2) requires a pleading to contain "a short and plain
> statement of the claim showing that the pleader is entitled to
> relief." The purpose of this requirement is "to 'give the defendant
> fair notice of what the . . . claim is and the grounds upon which it
> rests.'" The factual allegations in the complaint need only "be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact)." "[D]etailed factual allegations" are not required,

but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal citations and footnote omitted) (alteration in original). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.*

Plaintiff's sole cause of action is a breach of contract claim. As this Court sits in diversity, it applies Texas law to determine the sufficiency of the Complaint. In Texas, a breach of contract claim requires: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. Ct. App.—Houston [1st. Dist.] 2001, reh'g overruled)). Here, Plaintiff alleges that it entered into an agreement with Defendant where Plaintiff made a loan to Defendant to pay certain insurance premiums and Defendant was required to make 11 consecutive monthly payments to Plaintiff. (Doc. 1 at 2). But the Complaint alleges Defendant defaulted under the agreement by failing to make timely payments. *Id.* at 3. Finally, Plaintiff's damages as a result of the breach are alleged to be $328,276.89. (Doc. 11-2 at 5). Plaintiff's allegations in the Complaint, Motion for Default Judgment, and exhibits attached to the Motion for Default Judgment state a claim for breach of contract.

### C. Plaintiff's Right to Relief

#### 1. Breach of Contract

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. On March 5, 2026, pursuant to Federal Rule of Civil Procedure 55(b)(2), the

Court held an evidentiary hearing covering the issue of remedy. (Doc. 15). Plaintiff seeks a money judgment, including attorney fees and costs, as well as post-judgment interest, due to Defendant's breach of the Finance Agreement. At the hearing, Plaintiff's counsel pointed to the affidavit of Plaintiff's employee, Diana Rieger, which affirms the authenticity of the Finance Agreement and the facts laid out in the Complaint. (Doc. 11-2 at 2–5). Further, the affidavit provided that Defendant's October 2024 payment was returned due to non-sufficient funds and Defendant has failed to make any other payments due under the Finance Agreement. *Id*. at 4. Finally, it stated the amount due and owning, after acceleration, and not including attorney fees and costs, total $328,276.89 as of February 4, 2026. *Id*. at 5.

### 2. Post-Judgment Interest

In its Motion for Default Judgment, Plaintiff also requests post-judgment interest at the legal rate until paid in full. (Doc. 11-1). "The issue of post-judgment interest on a judgment entered in federal court is governed by federal law." *Lohr v. Gilman*, No. 15-CV-1931, 2018 WL 6199290, at *11 (N.D. Tex. Nov. 28, 2018) (citing *Hall v. White, Getgey, Meyer Co.*, 465 F.3d 587, 594–95 (5th Cir. 2006)); *First Horizon Home Loans v. Sec. Mort. Corp.*, No. 09-CV-2182, 2010 WL 3659908, at *2 (N.D. Tex. Sept. 16, 2010) ("Regardless of whether a cause of action is based on state law or federal law, federal law determines post-judgment interest.") (citing *Bos. Old Colony Ins. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (noting that federal post-judgment interest applies even in diversity cases)). The statute 28 U.S.C. § 1961 "provides, in pertinent part, that 'interest shall be allowed on any money judgment in a civil case recovered in a district court' and that such 'interest shall be calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week

preceding the date of the judgment.'" *Lohr*, 2018 WL 6199290, at *11 (citing 28 U.S.C. § 1961(a)). Therefore, Plaintiff is entitled to an award of post-judgment interest at the rate published for the week ending prior to the date of judgment until the date paid.

### 3. Attorney Fees

Finally, in its Motion for Default Judgment, Plaintiff requests attorney fees and costs. (Doc. 11-1). Under Texas law, an award of attorney fees is mandatory for a party prevailing in a breach of contract case. *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 436 (5th Cir. 2003) (citing *Gunter v. Bailey*, 808 S.W.2d 163, 166 (Tex. App.—El Paso 1991, no writ)). Further, here, the Financial Agreement states that "Texas insureds agree that if, for collection, this Agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay to AFCO all court costs actually incurred and reasonably attorney fees assessed by a court." (Doc. 11-2 at 9).

In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, a court must calculate the "lodestar" amount, which is equal to the number of hours reasonably expended on the case multiplied by the hourly rate in the community for similar work. *Id*. at 392. In performing this calculation, the Court excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id*.; *see Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party seeking reimbursement of attorney fees bears the burden to provide sufficient evidence that is adequate for the Court to determine reasonable hours expended. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995).

However, once the Court determines the lodestar, it may enhance or decrease the amount of attorney fees based on the relative weights of the twelve *Johnson* factors. *Serna v. Law Office*

*of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157 (5th Cir. 2015); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19. Notably, "[a] strong presumption exists that the lodestar represents a reasonable fee that should be modified only in exceptional circumstances." *Payne v. Univ. of S. Miss.*, 681 F. App'x 384, 390 (5th Cir. 2017) (quoting *Pembroke v. Wood County.*, 16 F.3d 1214 (5th Cir. 1994)).

In conjunction with Plaintiff's Motion for Default Judgment, Plaintiff's counsel, Ms. Colette Willer, provided an affidavit regarding attorney fees and costs. (Doc. 13). According to the affidavit submitted, a staff attorney, associate, paralegal, and counsel performed a collective 10.40 hours on this case and billed hourly rates of $425, $425, $215, and $645, respectively. *Id*. at 2. Having reviewed Ms. Willer's affidavit, the Court finds these hourly rates are reasonable. *Id*. Thus, Plaintiff should be awarded $3,580.40 in reasonable attorney fees from Defendant.

Finally, Plaintiff seeks costs of $405.00. (Doc. 13 at 5). Plaintiff provides the costs went to pay the filing fees in this case. *Id*. Therefore, Plaintiff should be awarded $405.00 in costs from Defendant.

9

## IV.    RECOMMENDATION

For the aforementioned reasons, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 11). Further, the Court **RECOMMENDS** a final judgment be entered against Defendant as follows:

It is hereby **ORDERED** that:

1. Judgment is entered in Plaintiff AFCO Credit Corporation's favor and against Defendant Logan Transportation, Inc. in the amount of $332,262.29 (the "Judgment Amount"), consisting of: (1) $328,276.89 due and owing under the Premium Finance Agreement as of February 4, 2026, and (2) $3,985.40 in attorney fees and costs;

2. On and after the date of judgment, interest shall accrue on the Judgment Amount, less any payments received from Defendant Logan Transportation, Inc., at the rate set forth in 28 U.S.C. § 1961 until satisfied in full; and

3. Entry of this Order is a final order.

SIGNED this 6th day of March, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

11